UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

COREY BENSON,

                Plaintiff,

v.                                                               Case No. 23-cv-1472-bhl

CHARLES YORK, et al.,

                Defendants.

---

## DECISION AND ORDER

---

      Plaintiff Corey Benson, who is incarcerated at Waupun Correctional Institution, is representing himself in this 42 U.S.C. §1983 case. He is proceeding on claims that: (1) Defendant Charles York violated Benson's First Amendment rights by refusing to deliver a book that Benson's family had ordered for him from Amazon; (2) Defendants Lana Wilson, Randall Hepp, Emily Davidson, and Cindy O'Donnell refused to intervene to remedy the violation; and (3) All Defendants retaliated against him in violation of the First Amendment. On August 21, 2024, Benson filed a motion for summary judgment. Dkt. No. 36. A few months later, he moved to supplement his legal brief. Dkt. No. 52. On September 6, 2024, Defendants filed a cross-motion for summary judgment. For the reasons explained below, the Court will deny Benson's motion for summary judgment, grant Defendants' cross-motion for summary judgment, and dismiss this case.

## BACKGROUND

      At the relevant time, Benson was incarcerated at Waupun Correctional Institution, where York worked as the property sergeant, Wilson was the institution complaint examiner, and Hepp

was the warden.  Davidson worked as an inmate appeal examiner with the office of the secretary, and O'Donnell worked in that office as a policy initiatives advisor.  Dkt. Nos. 40, 49 at ¶¶1-7.

On March 11, 2022, a package addressed to Benson arrived at the prison.  York reviewed the package and noted that it did not have a return address.  Accordingly, pursuant to DAI Policy 309.04.01(V)(D)(1)(f), York deemed the package suspicious.  York did not open the package, and, pursuant to policy, he wrote Benson a notice of non-delivery indicating that the name and address of the sender was unknown and, therefore, the package posed a threat to the security and safety of the facility.  York asserts that he did not know what was in the package; he denied delivery solely because the package did not have a return address.  Dkt. Nos. 40, 49 at ¶¶32-44, 57; Dkt. No. 41-2 at 5.

A little over a week later, on March 28, 2022, Benson wrote an information request explaining that his family had ordered two books for him that were not contraband and did not pose a threat to security.  He further stated that the books arrived in Amazon packaging and that the packages contained gift receipts, as required.  That same day, York responded, "Packages that arrive without a return address are not allowed."  Benson then wrote a second information request complaining that York had never informed him that items arriving in Amazon packaging would be denied.  York responded the next day, on March 29, 2022, "Don't blame me for your problems! Policy is policy!"  Dkt. No. 23-2 at 16-18.

On March 29, 2022, the book *Smith's Guide to Habeas Corpus Relief for State Prisoners*, which had been delivered to the prison about a week earlier, was given to Benson.  York explains that he does not specifically remember the package the book arrived in, but he has no reason to suspect it violated policy because he opened, processed, and delivered the book to Benson.  York asserts that, if the package had violated policy, he would have documented the violation.  He

2

explains that he has no authority to override policy and deliver the contents of a package that violates policy. He states that doing so would violate his job duties and could create a threat to the safety and security of himself and the prison. Dkt. Nos. 40, 49 at ¶¶47-53, 62, 73.

The same day Benson received the book, he wrote an information request asking York to deliver the other book, which had arrived "in the same packaging." He asked why he could receive one but not the other if they both arrived in the same Amazon packaging. The next day, on March 30, 2022, York responded, "You were given what was in that package." Benson then wrote to York's supervisor and questioned why one book was delivered and the other was not, given that they both arrived in the same packaging. York's supervisor responded, "Well then the one had the proper return address and the other does not per policy." Dkt. No. 23-2 at 24-28.

On April 5, 2022, the institution complaint examiner's office acknowledged Benson's inmate complaint about this issue, and Wilson investigated the complaint. She reviewed the package and noted that it did not have a return address.[1] She did not open the package because doing so could have posed a risk to her and the prison's safety and security. Wilson asserts that she had no authority to open the package or to order York to do so. Wilson recommended that the inmate complaint be dismissed because the package did not have a return address as required by policy. Hepp accepted the recommendation and dismissed the inmate complaint. Davidson recommended dismissal of Benson's appeal for the same reason, and O'Donnell accepted the recommendation and dismissed the appeal. Dkt. Nos. 40, 49 at ¶¶83-111; Dkt. No. 23-2 at 39.

---

[1] A photograph of the package shows that the mailing label does not have a return address. Dkt. No. 23-2 at 40. Neither party submitted a photograph of the second package in which the delivered law book arrived, presumably because it was discarded when the book was delivered to Benson.

3

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Benson insists that Defendants violated the First Amendment when York refused to deliver the book he contends was ordered from Amazon and when the remaining Defendants upheld York's decision. But Benson frames the issue incorrectly. York did not refuse to deliver the book; he refused to process a package that did not comply with the policy requiring all incoming mail to have a return address. As will be discussed in detail below, York's refusal and the remaining Defendants' approval of that refusal did not run afoul of the First Amendment.

It is well established that prisoners have a right under the First Amendment to both send and receive mail. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). But that right is not without limitation. The Supreme Court long ago held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 89 (1987). Defendants explain that for the safety and security of officers, inmates, and the prison, policy requires that incoming mail include a return address. Mail that does not have a return address suggests an effort to hide the mail's origins for potentially malevolent purposes. Mail without a return address is not opened or delivered. Strict enforcement of the return address policy avoids risking officers' safety because it saves them from having to open and inspect potentially unsafe packages. It also saves time and resources because it allows officers to process mail effectively and efficiently.

Defendants have explained that the policy requiring mail to have a return address is related to legitimate penological interests, including the need to maintain the safety and security of the institution and to conserve officers' time and resources in connection with incoming mail that raises questions as to its origin. These are reasonable and legitimate penological interests. And it is undisputed that the book York complains Defendants failed to deliver arrived in a package without a return address. Accordingly, York's decision not to open or process the package did not run afoul of the First Amendment, nor did the remaining Defendants' decision to affirm York's decision.

Benson insists that York should have opened the package because he told York that the package contained a law book ordered from an approved vendor. But "[t]he Constitution does not oblige guards to believe whatever inmates say." *Riccardo v. Rausch*, 375 F.3d 521, 527 (7th Cir. 2004). Although there is no suggestion that Benson did anything improper, it is not difficult to

5

imagine a scenario in which an inmate cooperates with someone on the outside to use approved books as a means of smuggling drugs or encoded messages into the prison. It would take valuable time and resources (which are already in short supply) for officers to verify an inmate's statements about an unaddressed package's contents. In any event, York explains that he does not have the authority to disregard policy; he must strictly enforce it for his and the prison's safety, which means leaving the package unopened and giving an inmate a notice of non-delivery. Although strict enforcement of the policy in these particular circumstances may seem overly harsh or even absurd to Benson, it is not the Court's role to second guess prison administrators' "difficult judgments concerning institutional operations." *Turner*, 482 U.S. at 89 (citations omitted).

Benson also highlights that York delivered the second book, so he should have delivered the first book. Benson claims the books arrived in the same packaging, but he offers no evidence to support that assertion. And given the fact that he was incarcerated and not working in the mail room, he would not have seen the packaging that contained the delivered book. Accordingly, he has no personal knowledge of what the mailing label on either package looked like or whether the label on the second package lacked a return address, like the first package. York acknowledges that he does not remember the package specifically, but he asserts that it must have had a return address because if it did not, he would have documented that. Moreover, even if the second book had arrived in a package without a return address and York opened, inspected, and delivered it in violation of policy, this would not support a First Amendment claim. The Constitution does not require that a prison employee violate policy every time simply because he may have violated it once. In short, York did not violate the First Amendment when he refused to open, process, and deliver a package that did not have a return address, and the remaining Defendants did not violate

6

the Constitution when they upheld York's decision. Defendants are therefore entitled to summary judgment on this claim.

Defendants are also entitled to summary judgment on Benson's retaliation claim. According to Benson, Defendants retaliated against him by refusing to deliver the book that his family had purchased. To prevail, Benson must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

Benson asserts that the First Amendment activity he engaged in was purchasing the book and that the deprivation he suffered was the non-delivery of the paid-for book. But even assuming Benson presents evidence to satisfy the first two elements of the standard, his claim fails because he does not create a triable issue on the third element. Specifically, he fails to present evidence from which a jury could reasonably conclude that Defendants were motivated to take the alleged retaliatory action (not delivering the book) because of his protected activity (purchasing the book). As discussed, the record shows that York refused to process and open the package solely because it did not contain a return address—the contents of the package were irrelevant to his decision. Accordingly, because Benson does not present evidence for a reasonable jury to find that his purchase of the book was the reason the package was not delivered, his retaliation claim fails. Defendants are therefore entitled to summary judgment on this claim as well.

**IT IS THEREFORE ORDERED** that Benson's motion for summary judgment (Dkt. No. 36) is **DENIED**, Benson's motion to supplement his legal brief (Dkt. No. 52) is **GRANTED**,

7

Defendants' cross-motion for summary judgment (Dkt. No. 38) is **GRANTED,** and this action is **DISMISSED**. The clerk of court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on January 21, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.